## Nathaniel Goddard *versus* The City of Boston

A complaint to the Court of Common Pleas, setting forth that the complainant' land has been taken by the city of Boston to widen a street, and praying for a jury to assess his damages, must be brought within twelve months from the time when the land was so taken.

This was a petition filed by Goddard in the Court of Common Pleas, January term 1836, setting forth that the mayor and aldermen of Boston had taken a parcel of his land for a street, and praying that a jury might be empannelled to assess his damages.   More than twelve months had elapsed after the taking of the land, before the filing of the petition, and for this reason *Ward* C  J. ruled that the petition could not be sustained.   The petitioner filed exceptions to the decision.

*Bartlett,* for the petitioner.                                    *June 25th*

*C. P. Curtis* and *B. R. Curtis,* for the respondents.

Shaw C. J. delivered the opinion of the Court.   The    *June 30th* question in this case is, whether the complainant commenced his proceedings seasonably against the city, to obtain compensation for damage sustained by him in taking a portion of his land to widen a street, it appearing that his complaint was not filed within one year after the land was taken.

The question is whether, in this city, the right to commence such proceedings is limited to the term of one year. This depends upon a careful revision and comparison of the statutes.

The jurisdiction over this subject is given to the Court of Common Pleas in this county, by *St.* 1821, *c.* 109.   This statute was passed simultaneously with the city charter, was limited to go into operation with it, and made sundry provisions which would be necessary and useful when that system of government should take effect, and it constituted with the city charter one system.   It was desirable amongst other things, that the Court of Sessions should be finally abolished, and for this purpose all its purely judicial powers were transferred to the Court of Common Pleas, and its administrative and executive functions were vested in the mayor and alder men, the board of accounts, and other bodies.

This statute, § 8, provides that the Court of Common Pleas shall have all the powers before exercised by the Court of Sessions with regard to streets and ways, and it directs the mode in which trials shall be conducted, that is, at the bar of the court instead of the old mode still practised in other counties, before a sheriff's jury. We are next to resort to other statutes to see how this jurisdiction is to be exercised. Previously to the incorporation of this town as a city, several acts had been passed, making some alterations in the mode of laying out streets and ways in Boston, in a manner somewhat differing from that of the general laws of the Commonwealth.

These provisions are principally contained in two acts, viz St. 1799, c. 31, and St. 1804, c. 73. The former provides, § 3, that the selectmen shall have power to lay out and widen streets, and remove buildings of what nature soever therefrom, and that the owners of such buildings shall receive compensation for the damages, to be ascertained, determined and recovered in the way pointed out by the " act directing the method of laying out highways."

The later statute of 1804 uses nearly the same language, as to the power to lay out and widen streets and remove buildings, but makes some alterations in other respects. It provides that the owners of such land or buildings shall receive such recompense for the damage as the party interested and the selectmen shall agree upon, to be paid, &c., or as shall be ordered by the justices of the Court of General Sessions, upon an inquiry by a jury to be summoned and to be drawn out of the jury box of the Supreme Judicial Court, &c., or by a committee, if the parties agree thereunto. The main purpose of this latter act apparently was to vest in the select-men a power to settle the damage by agreement, whereas by the prior act it would be necessary to resort to a court of justice in every case to assess the damages. Besides, the act of 1799 in terms mentions only damages to buildings; whereas that of 1804 includes land or buildings. Whether the construction would be the same, as in a remedial statute it probably would, is immaterial; it was probably thought expedient to remove any possible doubt on the subject.

Another contemplated alteration apparently was, that when

proceedings were had before the Court of Sessions, the jurors
should be drawn from the Supreme Judicial Court jury box.
But still, if the parties could not adjust the damages, by agree-
ment, or unite in the appointment of a committee for that pur-
pose, resort was to be had to the adjudication of a Court of
Sessions.   But the act of 1804 provides no mode, by which
application is to be made to the Court of Sessions.   But as
this act is *in pari materia*, and in its title is an act in addition
to the act of 1799, the two are to be taken and expounded
together, as making one system.   The fact that the subse-
quent statute is entitled an act in addition, &c. shows suffi-
ciently the intent of the legislature not to repeal the latter, but
to add to, modify and amend it, so that both are to be taken
as one act.   This being the case, we are to resort to the pro-
visions of the statute of 1799, to ascertain the manner in
which the proceedings were to be instituted to obtain compen-
sation, and for that purpose this act refers to the act directing
the method of laying out highways.

The act thus referred to, is *St.* 1786, *c.* 67.   This act,
§ 1, provides for laying out private ways and town ways.   It
empowers selectmen to lay out town ways, subject to be ap-
proved by a vote of the town in town meeting.   It provides
that a party whose land is taken and who is injured thereby,
shall receive such recompense as the party interested and the
selectmen shall agree upon, to be paid, &c., or as shall be
ordered by the justices in their General Sessions, upon an
inquiry into the same by a jury, or by a special committee if
the parties agree thereto.

This act contains no particular direction as to the time and
mode in which application is to be made to the Court of Ses-
sions, but it presupposes a jurisdiction vested in them, upon
this subject.   Then by going back to the *St.* 1785, *c.* 75, we
find how this jurisdiction was established.   It is a long act for
regulating towns and town officers, and fixing their powers and
duties, and incidentally, not as the leading purpose of the act,
declares their powers in regard to laying out town ways.   The
latter part of § 7 provides that towns may allow and approve
of town and private ways, laid out by the selectmen, or alter
or discontinue, saving always to any person aggrieved, liberty

Goddard
*v.*
Boston.

of applying for remedy to the Court of General Sessions, who are empowered and directed to inquire into and deter mine the matter by a jury, &c., and to assess damages for the party injured, and provided such application be made to the Court of General Sessions within twelve months after such way is approved, and not otherwise.

These two statutes being *in pari materia*, are to be construed together. A later statute on a given subject, not repealing an earlier one, in terms, is not to be taken as a repeal by implication, unless it is plainly repugnant to the former, or unless it fully embraces the whole subject matter. In the present case, had the later statute provided any other period than one year, for commencing the process, it would have been repugnant to the former, and so a virtual repeal of it. Or if it had directed that an application might be made at any time after the way is established, it would have been a repeal by implication. But the later statute contains no other limitation, and no other provision, from which it can be inferred that it was the intention of the legislature to remove the limitation in the statute of 1785, which had been retained on the revision of the provincial act of 1 *Geo.* 2, Anc. Charters, &c. 459.

This act of 1785, we think, is the origin of the power and jurisdiction of the Court of Sessions upon this subject ; it directly authorizes an application to that court, and vests that court with authority to hear and adjudicate. But such application must be made within twelve months. It is scarcely necessary to add, that the power here given to the selectmen, is by the city charter transferred to the board of mayor and aldermen. We have already shown that the power now exercised by the Court of Common Pleas is derived from that given to the Court of Sessions, by the above statutes. But this direct authority to institute proceedings by an application to the Court of Sessions, limits such application to the term of twelve months, and the Court are all of opinion that this limitation applies to the case of the plaintiff. There are many reasons of policy and expediency, why there should be this or some similar limitation, so that the matter shall be inquired into and adjusted and the damages paid within a short limited period, and whilst the transaction is recent and the evidence

upon the subject easily obtained, and whilst the affairs of the public may be presumed to be administered by those, who were conversant with them when the transaction occurred. This consideration however would have little weight in construing the provisions of positive law, the meaning of which could be satisfactorily ascertained from the terms used, but might be entitled to some regard in turning a doubtful scale.

The exceptions to the decision of the judge of the Court of Common Pleas are overruled, and the judgment of that court affirmed.